UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR13-303JNE/JSM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** |
| | ) | |
| Plaintiff, | ) | 18 U.S.C. § 1001 |
| | ) | |
| v. | ) | |
| | ) | |
| 1. PATRICK JOSEPH NOLAN III, and | ) | |
| | ) | |
| 2. DARCY ANDERSON WEILER, | ) | |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

1. At all times material to this indictment:

   a. Defendant PATRICK JOSEPH NOLAN III ("NOLAN") was a resident of the State of Minnesota.

   b. Defendant DARCY ANDERSON WEILER ("WEILER") was a resident of the State of Minnesota.

   c. Unified Home Solutions ("UHS") was a Minnesota entity owned and operated by RICHARD SCOTT SPADY ("SPADY"). SPADY held UHS out as a non-profit business purportedly helping homeowners rescue their homes from foreclosure.

   d. American Mortgage Lenders ("AML") was a Minnesota entity owned and operated by SPADY. AML operated at least in part as a mortgage brokerage company facilitating real estate loans.

   e. TITLE AND CLOSINGS, INC. ("TCI") was a Minnesota entity engaged in the real estate closing business. NOLAN owned TCI. WEILER was employed as a closing agent at TCI.

### The Investigation of UHS

2. In 2011 and 2012, the United States Postal Inspection Service ("USPIS") and the United States Internal Revenue Service – Criminal Investigations Division ("IRS-

SCANNED
DEC 1 8 2013
U.S. DISTRICT COURT MPLS

CID") were investigating a purported foreclosure rescue program operated by SPADY and his company UHS. The USPIS and IRS-CID are responsible for investigating violations of certain federal criminal statutes, including but not limited to statutes relating to fraud and money laundering. A Postal Inspector from USPIS and a Special Agent from IRS-CID ("the Agents") were principally responsible for the investigation.

3. During their investigation, the Agents learned from witnesses and other evidence that UHS was operating a program by which homeowners facing foreclosure would sell their homes to third parties. UHS arranged the sales to the third parties, who were referred to as "investors" because they were not buying the homes as residences, but rather they intended to resell the homes back to the original distressed homeowners within one to two years. The Agents learned that investors obtained mortgage loans to buy the homes, and the original homeowners expected, in most cases, to remain in the homes and pay rent to the investor until they could rebuild their finances and buy the home back.

4. Although they faced foreclosure due to a present inability to pay their mortgage, the original homeowners still had some equity in the home above and beyond what was owed on the mortgage. At the closing of the sale to the investor, the original homeowner received a check representing the equity, which they were required to sign over to the investor in order to participate in the UHS program. Funds from the equity checks were used to pay a fee to UHS and the investor, to repay some investors for their down payments and mortgage payments on the homes, and sometimes for other purposes.

5. When deciding whether to lend money for a home purchase, mortgage

U.S. v. Patrick Joseph Nolan III, et al.

lenders require information about sources of funds used by the borrowers purchasing the property, who bears various expenses in connection with the sale and the loan, who receives funds from the sale, and other arrangements between the seller and buyer. This information is important to lenders engaging in mortgage loans.

6. In conducting their investigation, the Agents sought to determine whether mortgage lenders who financed home sales to the investors had been defrauded because information about the arrangements among UHS, the investors, and the original homeowners had been misrepresented or concealed in connection with the loans. The misrepresentation or concealment of material information from a mortgage lender issuing a loan is a federal crime. Certain financial transactions involving the proceeds of crime are also illegal under federal criminal statutes.

7. The Agents learned in the investigation that many closings of the sales and loans involved in the UHS program had been conducted by TCI. In many cases, WEILER was the principal closing agent. At all relevant times, NOLAN was WEILER's employer and direct supervisor.

8. As part of the investigation, the special Agents interviewed NOLAN and WEILER. It was important to the Agents to determine what NOLAN and WEILER knew about the UHS program, including, for example, the arrangement whereby the sellers surrendered their equity proceeds and remained in the homes with an agreement to buy the homes back, who shared in the proceeds of mortgage loans, and who knew details of the UHS transactions. This information was important not only to determining whether NOLAN and WEILER, or others, potentially had committed crimes.

9. NOLAN and WEILER lied to the Agents when interviewed. WEILER denied knowing details of the UHS program including the arrangement for the original homeowners to remain in the homes and buy the homes back, when in fact WEILER had raised concerns about the arrangement with NOLAN. NOLAN denied knowing details of the UHS program, including the arrangement for the original homeowners to remain in the homes and buy the homes back, even though WEILER had previously discussed it with NOLAN and NOLAN had told WEILER not to interfere.

## COUNT 1
(False Statement – 18 U.S.C. § 1001)

10. Paragraphs 1-9 are hereby realleged and incorporated by reference.

11. On or about July 12, 2011, in the State and District of Minnesota, in a matter within the jurisdiction of the United States Postal Inspection Service, an agency of the United States, the defendant,

**DARCY ANDERSON WEILER,**

knowingly and willfully made a materially false, fictitious and fraudulent statement, in that the defendant falsely told an agent of the United States Postal Inspection Service that WEILER was unaware that property sellers participating in the UHS program had an agreement with the buyers to remain in the homes and buy them back at a later date, when in truth and in fact, WEILER knew of the arrangement and had raised concerns about it with NOLAN, all in violation of Title 18, United States Code, Section 1001.

## COUNT 2
(False Statement – 18 U.S.C. § 1001)

12. Paragraphs 1-9 are hereby realleged and incorporated by reference.

13. On or about September 13, 2012, in the State and District of Minnesota, in a matter within the jurisdiction of the United States Postal Inspection Service, an agency of the United States, the defendant,

### PATRICK JOSEPH NOLAN III,

knowingly and willfully made a materially false, fictitious and fraudulent statement, in that the defendant falsely told an agent of the United States Postal Inspection Service that NOLAN was unaware that property sellers participating in the UHS program had an agreement with the buyers to remain in the homes and buy them back at a later date, when in truth and in fact, NOLAN knew of the arrangement and had discussed it with WEILER, all in violation of Title 18, United States Code, Section 1001.

## COUNT 3
(False Statement – 18 U.S.C. § 1001)

14. Paragraphs 1-9 are hereby realleged and incorporated by reference.

15. On or about September 13, 2012, in the State and District of Minnesota, in a matter within the jurisdiction of the United States Postal Inspection Service, an agency of the United States, the defendant,

### PATRICK JOSEPH NOLAN III,

knowingly and willfully made a materially false, fictitious and fraudulent statement, in that the defendant falsely told an agent of the United States Postal Inspection Service that NOLAN never discussed the UHS transactions with WEILER, when in truth and in fact,

WEILER had brought concerns to NOLAN about the UHS transactions shortly after TCI began performing closings and NOLAN had directed WEILER to continue, all in violation of Title 18, United States Code, Section 1001.

A TRUE BILL

_____    _____
ACTING UNITED STATES ATTORNEY    FOREPERSON